UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

DAVID LACHAPELLE,

                 **Plaintiff,**

        **- against -**

ROBYN RIHANNA FENTY p/k/a
RIHANNA,
ISLAND DEF JAM MUSIC GROUP,
a division of UMG RECORDINGS, INC.,
MELINA MATSOUKAS, and
BLACK DOG FILMS, INC.,

               **Defendants.**

------------------------------------------------- X

**OPINION AND ORDER**

**11 Civ. 945 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/20/11

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

      David LaChapelle brings this action against Robyn Rihanna Fenty ("Rihanna"), Island Def Jam Music Group ("Def Jam"), Melina Matsoukas, and Black Dog Films, Inc. ("Black Dog"), for copyright and trade dress infringement under federal law, and unfair competition and unjust enrichment under New York common law, relating to defendants' music video "S&M" ("the Video") created for Rihanna's song of the same name.  LaChapelle alleges that the defendants unlawfully used protected expressions from eight of his photographs ("the

1

Photographs") in the Video.  In response, defendants now move to dismiss the complaint in its entirety.  For the reasons set forth below, defendants' motion is granted in part, and denied in part.

## II.   BACKGROUND[1]

LaChapelle is an "artist, photographer, and director,"[2] with a "world-wide reputation for his unique body of work in fashion and editorial photography, defined by its saturating, vibrant colors and theatrical, often surreal composition."[3] He has photographed "top stars of music, sports, fashion and film."[4]  Although LaChapelle is known primarily for his photography, which is widely featured in museum exhibits and major publications, his career has recently expanded to include direction of live theatrical events, documentary films, advertising campaigns, and music videos.[5]  He charges up to one million dollars to "direct/produce" a music video.[6]

---

[1]      On a motion to dismiss, a plaintiff's factual allegations are accepted as true.  *See, e.g.*, *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC*, 568 F.3d 374, 376 (2d Cir. 2009).

[2]      Complaint ("Compl.") ¶ 1.

[3]      *Id.* ¶ 17.

[4]      *Id.* ¶ 18.

[5]      *See id.* ¶¶ 18-22.

[6]      *Id.* ¶ 23.

Rihanna is a musical performing artist whose song "S&M" ("the Song") was released on January 25, 2011, as the fourth single from her latest album "Loud."[7]  On February 1, 2011, Def Jam released the Video, a music video for the Song, which was produced by Black Dog and directed by Matsoukas.[8]  Def Jam owns the copyright in the Video.[9]

Defendants were allegedly aware of plaintiff's work.[10]  For example, plaintiff filmed Rihanna in a day-long shoot in July 2007 for an MTV advertisement, and photographed Mariah Carey for Def Jam in 2010.[11]  In fact, Matsoukas and other prospective directors were asked by Rihanna or persons acting on her behalf to make a "LaChapelle-esque music video," and the storyboards for the Video consisted of or contained prints of the Photographs and other LaChapelle works.[12]  The gravamen of the Complaint alleges defendants unlawfully used protected elements of LaChapelle's work in the Video, including

---

[7]      *See id.* ¶¶ 2-3.

[8]      *See id.* ¶¶ 4-8.

[9]      *See id.* ¶ 9.

[10]      *See id.* ¶ 28.

[11]      *See id.* ¶¶ 29-30.

[12]      *Id.* ¶¶ 33-34.

but not limited to the Photographs upon which the Complaint primarily relies.[13]

## III.   LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court evaluates the sufficiency of the complaint under the "two-pronged approach" suggested by the Supreme Court in *Ashcroft v. Iqbal*.[14] First, a court "'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"[15] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.[16] Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[17]  To survive a Rule 12(b)(6) motion to dismiss, the allegations in the

---

[13]     *See* Ex. A, annexed hereto.

[14]     556 U.S. —, 129 S.Ct. 1937, 1950 (2009).

[15]     *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1950).  *Accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

[16]     *Iqbal*, 129 S.Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[17]     *Id.* at 1950.  *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

4

complaint must meet a standard of "plausibility."[18]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[19] Plausibility "is not akin to a probability requirement;" rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[20]

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[21]  However, the court may also consider a document that is not incorporated by reference, "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."[22]

## IV.   APPLICABLE LAW

---

[18]     *Twombly*, 550 U.S. at 564.

[19]     *Iqbal*, 129 S. Ct. at 1949 (quotation marks omitted).

[20]     *Id.* (quotation marks omitted).

[21]     *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[22]     *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).  *Accord Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006).

5

### A.    Copyright Infringement

To prove infringement under the Copyright Act,[23] "'a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; *and* (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's.'"[24]

### 1.    Actual Copying

The first element – actual copying – may be established by direct or indirect evidence.[25]  In the absence of direct evidence, "a plaintiff may establish copying circumstantially by demonstrating that the person who composed the defendant's work had access to the copyrighted material, and that there are similarities between the two works that are probative of copying."[26]

### 2.    Substantial Similarity to Protectible Elements

"[C]opyright protection may extend only to those components of a

---

[23]    *See* 17 U.S.C. § 101 *et seq.*

[24]    *Mannion v. Coors Brewing Co.*, 377 F. Supp. 2d 444, 449 (S.D.N.Y. 2005) (emphasis in original) (quoting *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995)).  *Accord Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2006).

[25]    *See Boisson v. Banian, Ltd.*, 273 F.3d 262, 267 (2d Cir. 2001).

[26]    *Jorgensen*, 351 F.3d at 51 (quotation marks and citations omitted).

work that are original to the author."[27]  "Original, as the term is used in copyright, means only that the work was independently created by the author . . . , and that it possesses at least some minimal degree of creativity."[28]  Of course, it is axiomatic that copyright protection only extends to the particular expression of an idea – not the idea itself.[29]  Thus, under the doctrine of scènes à faire, "elements of an image that flow naturally and necessarily from the choice of a given concept cannot be claimed as original."[30]

A photograph may be original in the rendition of a subject.  Rendition

---

[27]     *Feist,* 499 U.S. at 348.

[28]     *Id.* at 345.

[29]     *See Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 67 (2d Cir. 2010) ("This principle, known as the 'idea/expression dichotomy,' 'assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work.'" (quoting *Feist*, 499 U.S. at 349-50)).

[30]     *Bill Diodato Photography, LLC v. Kate Spade, LLC*, 388 F. Supp. 2d 382, 392 (S.D.N.Y. 2005) (finding that two photographs shot through the opening below a bathroom stall door of a woman's feet astride a toilet, showcasing her stylish shoes, did not share protectible original elements:  all of the elements for which plaintiff sought protection – "the legs and handbags . . . framed by the floor and bathroom walls," "shoot[ing] a photograph of the bottom part of a woman's legs in a bathroom or on a toilet," etc. – stemmed from the choice of the idea, namely "the depiction of a woman's feet as she sits on the toilet, used as a striking device to highlight fashion accessories," and were therefore unprotectible).  *Accord Williams v. Crichton*, 84 F.3d 581, 587-88 (2d Cir. 1996) ("[s]cènes à faire are unprotectible elements that follow naturally from a work's theme rather than from an author's creativity").

concerns not "*what* is depicted, but rather *how* it is depicted."[31]  Originality in

rendition may reside in the photographer's selection of lighting, shade, lens, angle,

depth of field, composition, and other choices, such as manipulation of color

balance, saturation, or contrast, that have an aesthetic effect on the final work.[32]

     A photograph may also be original in the creation of its subject, when

a photographer orchestrates the situation that is photographed, rather than simply

photographing a ready-made scene or thing.[33]  Thus, "if a photographer arranges or

---

[31]    *Mannion*, 377 F. Supp. 2d at 452.  I adopt Judge Kaplan's analysis in *Mannion*, which employs three categories of originality for assessing photographic work:  originality in (1) rendition, (2) timing, and (3) creation of a subject.  In the instant action, only the first and last are relevant.

[32]    *See, e.g.*, *Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109, 116 (2d Cir. 1998) ("Leibovitz is entitled to protection for such artistic elements as the particular lighting, the resulting skin tone of the subject, and the camera angle that she selected"); *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992) ("[e]lements of originality in a photograph may include . . . lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved"); *SHL Imaging, Inc. v. Artisan House, Inc.*, 117 F. Supp. 2d 301, 311 (S.D.N.Y. 2000) (elements of originality include "the totality of the precise lighting selection, angle of the camera, lens and filter selection").

[33]    *See, e.g.*, *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53 (1884) (originality of Oscar Wilde portrait founded upon overall composition, including pose, wardrobe, and background, "suggesting and evoking the desired expression"); *Rogers*, 960 F.2d at 304 (holding that plaintiff's copyright in photograph, which depicted an arranged scene of a man and woman on a park bench with eight puppies on their laps, protected against the defendant's attempt to replicate the subject matter of the photograph in a three-dimensional sculpture; emphasizing the detailed selection of "the location, the bench on which the [subjects] are seated and the arrangement of the small dogs").

otherwise creates the object that his camera captures, he may have the right to prevent others from producing works that depict that subject."[34]

"'The standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard the aesthetic appeal as the same.'"[35] "In applying the so-called 'ordinary observer test,' we ask whether 'an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'"[36] However, "in looking at . . . two works of art to determine whether they are substantially similar, focus must be on the similarity of the *expression* of an idea or fact, not on the similarity of the facts, ideas or concepts themselves."[37]

"[W]hen faced with works 'that have both protectible and unprotectible elements,'" the usual "ordinary observer" test becomes "more discerning,"[38] and the Court "must attempt to extract the unprotectible elements

---

[34]    *Mannion*, 377 F. Supp. 2d. at 450.

[35]    *Gaito*, 602 F.3d at 66 (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001)).

[36]    *Id.* (quoting *Knitwaves*, 71 F.3d at 1002).

[37]    *Rogers*, 960 F.2d at 308 (emphasis in original).

[38]    *Gaito*, 602 F.3d at 66 (quoting *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 123 (2d Cir. 1994)).

from . . . consideration and ask whether the protectible elements, standing alone, are substantially similar."[39]  "No matter which test we apply, however, we have disavowed any notion that 'we are required to dissect [the works] into their separate components, and compare only those elements which are in themselves copyrightable.'"[40]  Instead, the court is principally guided "by comparing the contested design's 'total concept and overall feel' with that of the allegedly infringed work."[41]  "Accordingly, the Second Circuit has recognized that 'the defendant may infringe on the plaintiff's work not only through literal copying of a portion of it, but also by parroting properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work . . . are considered in relation

---

[39]    *Id.* (quoting *Knitwaves*, 71 F.3d at 1002).

[40]    *Id.* (quoting *Knitwaves*, 71 F.3d at 1002).  *Accord Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 134 (2d Cir. 2003) ("[W]hile the infringement analysis must *begin* by dissecting the copyrighted work into its component parts in order to clarify precisely what is not original, infringement analysis is not *simply* a matter of ascertaining similarity between components viewed in isolation.").

[41]    *Id.* (citing *Tufenkian*, 338 F.3d at 133).  *Accord Boisson*, 273 F.3d at 272 (considering only those elements that alone are protectible "would result in almost nothing being copyrightable because original works broken down into their composite parts would usually be little more than basic unprotectible elements like letters, colors and symbols"); *Knitwaves*, 71 F.3d at 1003.

to one another.'"[42]  In fact, substantial similarity may be found even where the

protected work and the accused work exist in entirely different media.[43]

Ultimately, the inquiry focuses on whether the alleged infringer has

misappropriated "the original way in which the author has 'selected, coordinated,

and arranged' the elements of his or her work."[44]

### 3.    Fair Use Defense

"[T]he fair use of a copyrighted work . . . for purposes such as

criticism, comment, news reporting, teaching . . . scholarship, or research, is not an

infringement of copyright."[45]  Section 107 of the Copyright Act sets forth the

factors that a Court should consider in assessing the fair use defense:

> (1) the purpose and character of the use, including whether such
> use is of a commercial nature or is for nonprofit educational

---

[42]    *Canal+ Image UK Ltd. v. Lutvak*, --- F. Supp. 2d ----, No. 10 Civ. 1536, 2011 WL 1158439, at *11 (S.D.N.Y. Mar. 29, 2011) (quoting *Tufenkian*, 338 F.3d at 134).

[43]    *See, e.g.*, *Rogers*, 960 F.2d 301 (finding substantial similarity where a sculpture was modeled after a photograph).  *See also* 1 M. and D. Nimmer, Nimmer on Copyright ("Nimmer"), § 2.08 at 2-127 to 2-128 (2004) ("It is, of course, fundamental that copyright in a work protects against unauthorized copying, not only in the original medium in which the work was produced, but also in any other medium as well.  Thus, copyright in a photograph will preclude unauthorized copying . . . in any other form.").

[44]    *Knitwaves*, 71 F.3d at 1004 (quoting *Feist*, 499 U.S. at 358).

[45]    17 U.S.C. § 107.

purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.

Fair use is an affirmative defense to a claim of infringement; thus, the burden of proof is on its proponent.[46]  "[T]he determination of fair use is an open-ended and context-sensitive inquiry."[47]  Due to the fact-driven nature of the fair use determination "courts have found that fair use is usually unsuited to summary disposition,"[48] although the Second Circuit "has on a number of occasions resolved fair use determinations at the summary judgment stage where . . . there are no genuine issues of material fact."[49]

---

[46]   *See NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476-77 (2d Cir. 2004) (citing *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 107 (2d Cir. 1998)).  *See also Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994).

[47]   *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006).  *Accord Campbell*, 510 U.S. at 577 ("[t]he task is not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for case-by-case analysis"); *Harper & Row Publishers v. Nation Enters.*, 471 U.S. 539, 560 (1985) ("[f]air use is a mixed question of law and fact").

[48]   *World Wrestling Fed'n Ent'mt, Inc. v. Bozell*, 142 F. Supp. 2d 514, 531 (S.D.N.Y. 2001).  *Accord M. Shanken Commc'ns, Inc. v. Cigar500.com*, No. 07 Civ. 7371, 2008 WL 2696168, at *10 (S.D.N.Y. July 7, 2008) ("courts should be cautious in finding fair use as a matter of law even on a motion for summary judgment") (citing *Wright v. Warner Books, Inc.*, 953 F.2d 731, 735 (2d Cir. 1991)).

[49]   *Blanch*, 467 F.3d at 250 (internal citation omitted).

### B.    Trade Dress Infringement

### 1.    Generally

Section 43(a) of the Lanham Act prohibits the use of any "word, term, name, symbol, or device" that is "likely to cause confusion . . . as to the origin, sponsorship, or approval of . . . goods, services, or commercial activities" in interstate commerce.[50]  Section 43(a) "has been held to embrace not just word marks . . . but also 'trade dress' – a category that originally included only the packaging, or "dressing," of a product,"[51] but now "encompasses the overall design and appearance that make the product identifiable to consumers."[52]  A plaintiff asserting trade dress rights in the appearance or design of a product must:  (1) offer "a precise expression of the character and scope of the claimed trade dress";[53] (2) allege the product's design has acquired a "secondary meaning" that is distinctive as to the origin of the product;[54] (3) allege the defendant's use of the design is

---

[50]    15 U.S.C. § 1125(a).

[51]    *Wal-Mart Stores, Inc. v. Samara Bros.* ("*Samara I*"), 529 U.S. 205, 209 (2000).

[52]    *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 118 (2d Cir. 2001).

[53]    *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 272, 381 (2d Cir. 1997).

[54]    *Samara I*, 529 U.S. at 211.

13

likely to cause consumer confusion as to the origin of the product;[55] and (4) allege the design is "not functional."[56]

### 2.   Application to Communicative Products

In *Dastar Corp. v. Twentieth Century Fox Film Corp.*, the Supreme Court established that where the good in question is a "communicative product . . . such as . . . a video," the term "origin" in Section 43(a) refers to "the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods."[57]  While a consumer of a communicative product may in fact care more about the identity of the creator of the intellectual property embodied therein than the identity of the manufacturer of the tangible good, the Court "caution[ed] against misuse or over-extension of trademark and related protections into areas traditionally occupied by patent or copyright."[58]  Quite simply, "[t]he Lanham Act was 'not designed to protect originality or creativity' – that is the province of copyright."[59]  As then-District

---

[55]   *See* 15 U.S.C. § 1125(a)(1)(A).

[56]   *Id.* § 1125(a)(3).

[57]   539 U.S. 23, 29 (2003).

[58]   *Id.* at 34 (citing *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001)).

[59]   *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 307 (S.D.N.Y. 2011) (quoting *Dastar*, 539 U.S. at 37).

Judge Gerard Lynch put it, "[s]ince *Dastar*, Lanham Act claims arising from the alleged copying of creative work have been 'clearly foreclosed.'"[60]

## C.   State-Law Unfair Competition

### 1.   Generally

"In New York, 'the essence of unfair competition . . . is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods.'"[61]  "To establish unfair competition under New York common law, the plaintiff most prove (1) either actual confusion or a likelihood of confusion [as to the origin of the good];

---

[60]    *Hudson v. Universal Studios, Inc.*, No. 04 Civ. 6997, 2008 WL 4701488, at *8 (S.D.N.Y. Oct. 28, 2008) (quoting *Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, 546 F. Supp. 2d 120, 129 (S.D.N.Y. 2008)).  *See also Diodato*, 388 F. Supp. 2d at 395 (dismissing photographer's trade dress claim alleging shoe designer passed off a photograph substantially similar to plaintiff's under its own name; "not a viable Lanham Act claim").  In some sense, Section 43(a) *does* protect creativity and originality to the extent it protects trade mark and dress, including product design and appearance, which are products of creative work.  However, Section 43(a) only protects creativity in trade mark and dress to the extent the creative work indicates the origin of the product in which it is embodied – not to the extent it indicates the author, inventor, or creator of the mark or dress. That is the exclusive domain of copyright protection.

[61]    *Eyal R.D. Corp. v. Jewelex New York Ltd.*, --- F. Supp. 2d ----, No. 07 Civ. 132011, 2011 WL 1742111, at *3 (S.D.N.Y. May 4, 2011) (quoting *Jeffrey Milstein v. Greger, Lawlor, Roth Inc.*, 58 F.3d 27, 34-35 (2d Cir. 1995)).

and (2) bad faith on the part of the defendant."[62] "Thus, the standard for federal mark infringement and unfair competition is virtually identical to that under New York common law,"[63] except the latter requires a showing of bad faith.

## 2. Preemption by Copyright Act

The Copyright Act preempts all state laws that protect "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified" in the federal statute.[64]

> To decide whether a state law claim is preempted, this Court employs the "extra element" test which holds that: [I]f an "extra element" is "required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of copyright, and there is no

---

[62]  *SLY Magazine, LLC v. Weider Publ'ns L.L.C.*, 529 F. Supp. 2d 425, 442-43 (S.D.N.Y. 2007), *affd*, 346 Fed. Appx. 721 (2d Cir. 2009) (citing *Jeffrey Milstein*, 58 F.3d at 34-35).

[63]  *Id.* (quotation marks and citations omitted).  *Accord Kregos v. Associated Press,* 795 F. Supp. 1325, 1336 (S.D.N.Y. 1992), *aff'd*, 3 F.3d 656 (2d Cir. 1993); *Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 550-51 (S.D.N.Y. 2003); *Kaufman & Fisher Wish Co. v. F.A.O. Schwarz*, 184 F. Supp. 2d 311, 324 (S.D.N.Y. 2001); *Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339, 363 (S.D.N.Y. 1998) ("[i]t is well recognized that the standards for Section 43(a) claims of the Lanham Act and unfair competition claims under New York Law are almost indistinguishable"); *Girl Scouts v. Bantam Doubleday Dell Publ'g Group*, Inc., 808 F. Supp. 1112, 1131 (S.D.N.Y. 1992), *aff'd*, 996 F.2d 1477 (2d Cir. 1993).

[64]  17 U.S.C. § 301(a).

preemption."[65]

"The extra element must change the nature of the action so that it is *qualitatively* different from a copyright infringement claim."[66] "It is axiomatic that 'unfair competition and misappropriation claims grounded *solely* in the copying of a plaintiff's protected expression are preempted by [the Copyright Act].'"[67] Thus, the Second Circuit has held that "passing off" claims are *not* preempted by the Copyright Act because they involve an element of misrepresentation or deception as to the origin of the goods involved, which is not an element of copyright infringement claims.[68]

## V.   DISCUSSION

### A.   Copyright Infringement

---

[65]     *Samara Bros., Inc. v. Wal-Mart Stores, Inc.* , 165 F.3d 120, 131 (2d Cir. 1998) ("*Samara II*"), *rev'd on other grounds*, 520 U.S. 205 (2000) (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992) (other internal quotations and citations omitted)).

[66]     *Id.* (quotation marks and citations omitted) (emphasis in original).

[67]     *Orange County Choppers, Inc. v. Olaes Enters.*, 497 F. Supp. 2d 541, 556 (S.D.N.Y. 2007) (quoting *Samara II*, 165 F.3d at 131) (emphasis added). *Accord Kregos*, 3 F.3d at 666.

[68]     *See Samara II*, 165 F.3d at 131-32; *Warner Bros. v. American Broad. Co.*, 720 F.2d 231, 247 (2d Cir. 1983) ("[T]o the extent that plaintiffs are relying on state unfair competition law to allege a tort of 'passing off,' they are not asserting rights equivalent to those protected by copyright and therefore do not encounter preemption.").

LaChapelle has submitted evidence of valid copyrights in the Photographs.[69]  Thus, to survive this motion to dismiss the allegations must plausibly show that defendants (1) actually copied the Photographs, and (2) substantial similarity exists between the Video and protectible elements of the Photographs.

### 1.    Actual Copying

LaChapelle successfully alleges that defendants actually copied the Photographs.  *First*, the Complaint alleges direct evidence of actual copying, in stating that "the storyboards for the Music Video consisted of or contained prints of the [Photographs] and other LaChapelle photographs."[70]  *Second*, the Complaint alleges circumstantial evidence of actual copying: (1) defendants had access to and were aware of the Photographs through previous collaborations with LaChapelle and through various publications exhibiting the Photographs,[71] and (2) the Video bears similarities to the Photographs probative of copying.  Thus, plaintiff has

---

[69]    *See* Certificates of Registration, Ex. B to 4/28/11 Declaration of Tom J. Ferber, defendants' counsel, in Support of Defendants' Joint Motion to Dismiss the First Amended Complaint.

[70]    Compl. ¶ 34.  *See also id.* ¶ 32 ("Matsoukas was asked by Rihanna or persons acting on her behalf to make a 'LaChapelle-esque music video'"); *id.* ¶ 33 ("another well-known director was asked to create a LaChapelle-inspired music video").

[71]    *See id.* ¶¶ 28-31.

18

made a plausible showing of actual copying.

## 2.    Substantial Similarity to Protectible Elements

As a threshold matter, I consider which elements of the Photographs are *not* protectible – namely, the common theme of S&M and those elements that "flow naturally and necessarily from the choice"[72] of S&M as a subject.  Elements of leather- or latex-clad women, whips, ball gags, people in restraints, men on leashes, and other aggressive, sexually-charged motifs common to both the Video and the Photographs are not, as subjects, protectible elements.  To survive this motion, LaChapelle must allege that the Video is substantially similar to particular original expressions of these subjects in the Photographs.

LaChapelle successfully alleges the Photographs embody protectible elements.  LaChapelle alleges he does not "simply observe[] a pre-existing scene and mechanically record[] it."[73]  Rather, he "selects and orchestrates the themes, props, settings, wardrobes and colors" of his photographic subjects, while also controlling the "angles, poses and lighting."[74]  Similar allegations supported the court's finding in *Mannion* that a photograph contained original elements.  In that

---

[72]      *Diodato*, 388 F. Supp. 2d at 392.

[73]      *See* Plaintiff's Memorandum of Law in Opposition to the Defendants' Motion to Dismiss at 2.

[74]      *Id.*

case, a photograph was taken from a low angle, featuring a man wearing a white T-shirt, athletic pants, and jewelry, posed against a cloudy sky.[75]  The court held that the "relatively unusual angle and distinctive lighting," "posing man against sky," with a wardrobe and look that the subject adopted at the photographer's express instruction, all contributed to the photograph's originality that was protectible against copyright infringement.[76]  Because LaChapelle alleges he made comparable decisions in creating and rendering the Photographs, he successfully alleges that they contain protectible elements.

LaChapelle has also successfully alleged that the Video embodies substantial similarities to protectible elements in the Photographs.[77]  The Video's "Pink Room Scene" and LaChapelle's "Striped Face" both feature a choreographed

---

[75]     *See Mannion*, 377 F. Supp. 2d at 447.

[76]     *Id.* at 455.

[77]     While defendants aptly note that LaChapelle's copyright infringement claim may properly be eight separate claims for infringement of distinct copyrighted works, at the pleading stage I treat the Photographs collectively because the record is insufficient to distinguish them individually.  Thus, in considering substantial similarity on this motion, I do not consider whether or not to dismiss any particular photograph.  Rather, I consider a limited sample of the Photographs to show that substantial similarity plausibly exists between the Video and the Photographs generally.  Whether to distinguish and perhaps dismiss claims arising from particular photographs may be properly presented at a later stage in this proceeding.

S&M-inspired scene of women dominating men in a fanciful domestic space.[78]
From this choice of subject it follows naturally that both works depict women in a
living room with a man bound on the floor.  Because these subjects flow naturally
from the chosen idea, they are not protectible and are not probative of substantial
similarity.  However, it does *not* necessarily follow that both works feature:  hot-
pink and white striped walls; two single-hung windows in the middle of the back
wall; windows with glossy hot-pink casings and interior framework, with opaque
panes exhibiting a half-vector pattern of stripes against a yellow background; a
solid hot-pink ceiling; hot-pink baseboards; a hot-pink couch under the windows;
women wearing frizzy red wigs; a woman posed on top of a piece of furniture;
black tape wrapped around a man; and a generally frantic mood.  Moreover, it does
not necessarily follow that both works be well-lit and intensely saturated, with all
of the details in sharp focus and almost no shadows.  Defendants argue that,
notwithstanding these similarities, the differences in the Video preclude a finding
of substantial similarity.  They cite, for example, the pattern on the walls, the shape
of the room, the taped man's clothing and positioning, the focus on Rihanna over
the rest of the subjects, and the absence of witches, all as examples of differences.[79]

---

[78]     *See* Ex. B, annexed hereto.

[79]     *See* Defendants' Joint Memorandum of Law in Support of Their
Motion to Dismiss ("Def. Mem.") at 15.  "Striped Face" is part of a photographic
series titled "Witches Story."

However, "by definition copying need not be of every detail so long as the copy is substantially similar to the copyrighted work."[80]  "Indeed, although the protectibility and nonprotectibility of individual components of the copyrighted photograph must be considered by the Court, ultimately originality may be determined by the 'total concept and feel' of the photograph."[81]  In this case, both works share the frantic and surreal mood of women dominating men in a hyper-saturated, claustrophobic domestic space.  Thus, I find that an ordinary observer may well overlook any differences and regard the aesthetic appeal of "Striped Face" and the "Pink Room Scene" as the same.

LaChapelle's "Latex" and the Video's "Pink Hood Scene" both depict a woman wearing a latex hood.[82]  While this subject is emblematic of S&M attire and thus not protectible, both works also feature:  the woman in profile from close-up, with the frame cropped tight on her head; striking, direct lighting with no shadow; a highly saturated blue background; and the woman's mouth open and a small object on her tongue.  Because the choice of camera position, composition,

---

[80]    *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1093 (2d Cir. 1977) (quotation marks and citations omitted) ("the key is the similarities rather than the differences; only a slavish copy would have no differences and a copyright extends beyond a photographic reproduction").

[81]    *Diodato*, 388 F. Supp. 2d at 393 (quoting *Fournier v. Erickson*, 202 F. Supp. 2d 290, 295 (S.D.N.Y. 2002)).

[82]    *See* Ex. C, annexed hereto.

the model's expression, lighting, saturation, and color constitute "the original way in which [LaChapelle] has 'selected, coordinated, and arranged' the elements"[83] of his work, an ordinary observer could find substantial similarity between these protectible elements in "Latex" and the "Pink Hood Scene."

LaChapelle's "Noisy Fame" and the Video's "Press Scene" both convey the idea of a female celebrity helpless before the predatory gaze of the media.[84]  Both show the woman illuminated harshly from the front, as if by flashbulbs or a spotlight, with cameras, microphones, and anonymous figures of photographers and reporters partially visible along the sides and lower portions of the frame.  If the similarities ended there, a court might well conclude that no protectible elements were copied, since these details all flow naturally from the choice of subject.  In *Diodato Photography*, the court held that two photographs shot through the opening below a bathroom stall door of a woman's feet astride a toilet, showcasing her stylish shoes, did not share protectible original elements because the similarities, albeit rather specific,[85] flowed necessarily from the choice

---

[83]     *Knitwaves*, 71 F.3d at 1004 (quoting *Feist*, 499 U.S. at 358).

[84]     *See* Ex. D, annexed hereto.

[85]     *Diodato*, 388 F. Supp. 2d at 392 ("[T]hat the legs and handbags are framed by the floor and the bathroom walls is not protectible; to shoot a photograph of the bottom part of a woman's legs in a bathroom stall or on a toilet, it is necessary that the floor and the surrounding bathroom walls are in the frame. Likewise, it is standard for the photographer to take such a photograph from or

of an unprotectible idea – namely, "the depiction of a woman's feet as she sits on the toilet, used as a striking device to highlight fashion accessories."[86]  Here, however, both works also feature the woman with her back against a bright teal-blue wall, upon which the elbow of her raised arm casts a sharp dark shadow. These specific choices concerning staging and color are not necessary to express the concept of a helpless female celebrity being preyed upon by the media. Moreover, they contribute significantly to the overall feel of the image:  the teal-blue background is vivid and consumes most of the frame in both works, thereby establishing an unusual, even ethereal mood, while the presence of a wall directly behind the woman emphasizes and intensifies her victimization.  Defendants argue that the addition of a transparent plastic sheet pinning the woman to the wall distinguishes the "Press Scene" from "Noisy Fame."[87]  But "adding on" to a copy of protected expression does not, in itself, negate the plausibility of substantial

---

near the floor, and it follows that a portion of the floor closest to the camera might be out of focus.  A natural consequence of that positioning is also, often, a head-on view of the toilet.").  *Accord Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 979 (2d Cir. 1980) (scènes à faire include settings that are "as a practical matter indispensable, or at least standard, in the treatment of a given topic") (quotation marks and citation omitted).

[86]     *Diodato*, 388 F. Supp. 2d at 392.

[87]     *See* Def. Mem. at 12.

similarity.[88]  Thus, an ordinary observer might find the "Press Scene" to be

substantially similar to LaChapelle's protectible expression in "Noisy Fame."

### 3.    Fair Use Defense

Defendants raise a fair use defense to copyright infringement, but the

record is insufficient to make such a fact-intensive ruling as a matter of law.

Moreover, defendants' central argument on this point is misguided.  Defendants

argue that, if they used LaChapelle's protected material, it was to "critic[ize] how

Rihanna is treated by the press and comment on her relationship with the media."[89]

However, "[a]ll of the precedent this Court can identify imposes a requirement that

the new work in some way comment on, relate to the historical context of, or

critically refer back to the original works."[90]  Commenting on and criticizing

Rihanna's treatment by the media is unrelated to the Photographs and does not

require copying protectible elements of LaChapelle's work.  Thus, defendants' fair

---

[88]    *Tufenkian*, 338 F.3d at 132-33 (alleged infringer "gains nothing from 'adding on' to what she has precisely reproduced").  *Accord Rogers*, 960 F.2d at 308 ("Koons' additions . . . are insufficient to raise a genuine issue of material fact . . . in light of the overwhelming similarity to the protected expression of the original work.").

[89]    *See* Supplemental Memorandum of Defendants the Island Def Jam Music Group, Melina Matsoukas, and Black Dog Films, Inc. in Support of Their Motion to Dismiss at 2.

[90]    *Cariou v. Prince*, --- F. Supp. 2d ----, No. 08 Civ. 11327, 2011 WL 1044915, at *6 (S.D.N.Y. Mar. 18, 2011).

use defense is unavailing.  Because LaChapelle has alleged a plausible claim for copyright infringement and defendants have failed to raise a fair use defense, defendants' motion to dismiss LaChapelle's copyright claim is denied.

### B.   Trade Dress Infringement

The Complaint recites elements of a Section 43(a) Lanham Act claim for trade dress infringment:  LaChapelle's distinctive style, "defined by its saturating, vibrant colors and theatrical, often surreal composition,"[91] has developed a "secondary meaning" in the mind of the public, such that its use by defendants in the Video is likely to cause consumer confusion as to the Video's creator.[92]  Even accepting these allegations as true, however, LaChapelle is simply restating his copyright claim – albeit denominating it as trade dress infringement.  LaChapelle does not allege that viewers wrongly believed he was the "origin" of the Video, within the meaning of Section 43(a).  Rather, LaChapelle alleges that viewers wrongly believed he was "involved in the creation" of the Video[93] – that is, that he was the "author of [the] idea[s], concept[s], or communication[s] embodied [therein]."[94]  Although LaChapelle has successfully repackaged a

---

[91]     Compl. ¶ 17.

[92]     *See id.* ¶¶ 45-58.

[93]     *Id.* ¶ 51.

[94]     *Dastar*, 539 U.S. at 29.  The distinction between a "tangible" good and the ideas embodied therein becomes muddled with communicative goods in

copyright claim, he has failed to state a claim for trade dress infringement.  Thus, defendants' motion to dismiss is granted as to plaintiff's Lanham Act claim.

### C.     New York State Common Law Claims

LaChapelle's claim under New York common law for unfair competition fails for a similar reason.  Indeed, the standard in this Court for unfair competition under New York law is "virtually identical" to the standard under Section 43(a) of the Lanham Act.  Thus, "[b]ecause plaintiff's claims fail under the Lanham Act, [his] claim[] necessarily also fail[s] under New York common law."[95]  Had LaChapelle made a successful Lanham Act claim and, subsequently, a successful state-law unfair competition claim for "passing off," it would not be preempted by the Copyright Act because "passing off" involves the "extra element" of misrepresentation as to origin.[96]  However, having failed to make a claim for unfair competition, I need not address the issue.  Defendants' motion to

---

the digital age.  In *Dastar*, the communicative good was a tangible video cassette.  Here, the video is primarily distributed through the Internet, and never takes a "tangible" form.  Nonetheless, the distinction between the "origin" (a producer who provides financing, organizes overall production, owns the copyright, etc.) and a creator/author (who conceives the intellectual and aesthetic content) still applies.

[95]     *SLY Magazine*, 529 F. Supp. 2d at 443.  *Accord Gary Friedrich Enters., LLC v. Marvel Enters.*, 713 F. Supp. 2d 215, 227 (S.D.N.Y. 2010) (dismissing New York unfair competition claim because of failure to state a Lanham Act claim).

[96]     *See Samara II*, 165 F.3d at 131-32.

dismiss LaChapelle's unfair competition claim under New York law is granted.

Finally, the defendants have moved to dismiss the Complaint in its entirety, but neither party briefed LaChapelle's state-law unjust enrichment claim. Nonetheless, "'a state law cause of action for unjust enrichment . . . should be regarded as an equivalent right and hence, pre-empted insofar as it applies to copyright subject matter.'"[97]  Because LaChapelle's unjust enrichment claim is based solely on defendants' copying of his protected expression in the Photographs, it is preempted by the Copyright Act and must be dismissed.

## VI.   CONCLUSION

For the reasons discussed above, defendants' motion to dismiss is granted as to LaChapelle's claims for trade dress infringement, unfair competition, and unjust enrichment.  Defendants' motion is denied as to LaChapelle's claim for copyright infringement.  The Clerk of the Court is directed to close this motion [Docket No. 23].  A conference is scheduled for August 10, 2011 at 5:00 PM.

---

[97]    *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306-07 (2d Cir. 2004) (quoting Nimmer § 1.01[B][1][g] at 1-44 to 1-45 (2003)).

28

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            July 19, 2011

**- Appearances -**

**For David LaChapelle:**

Debra Anne Mayer, Esq.
Shatzkin & Mayer, P.C.
1776 Broadway, 21st Floor
New York, NY 10019
(212) 684-3000

**For Robyn Rihanna Fenty:**

Brad David Rose, Esq.
Tom J. Ferber, Esq.
Jacob Boyd Radcliff, Esq.
Pryor Cashman LLP
7 Times Square
New York, NY 10036-6569
(212) 326-0875

**For Island Def Jam Music Group and Melina Matsoukas:**

Amanda Marie Leith, Esq.
Robert Penchina, Esq.
Levine, Sullivan, Koch & Schulz, LLP
321 West 44th Street
Suite 510
New York, NY 10036
(212) 850-6123

**For Black Dog Films, Inc.:**

Thomas Anthony Catalano, Esq.
Lester, Schwab, Katz and Dwyer LLP
120 Broadway
New York, NY 10271
(212) 341-4298

**Exhibit A:**

**The Photographs      Stills from the Video**



**Exhibit B:**
**"Striped Face" (top) and "Pink Room Scene" (bottom)**





**Exhibit C:**
**"Latex" (top) and "Pink Hood Scene" (bottom)**





**Exhibit D:**
**"Noisy Fame" (top) and "Press Scene" (bottom)**



